========

NO. 14-2249

========

UNITED STATES COURT of
APPEALS for the FIRST
CIRCUIT

————————————

RUSSELL JARVIS, JAMES JARVIS,
ROBERT CRAMPTON and
COMMONWEALTH SECOND
AMENDMENT, INC.
Plaintiffs-Appellants

v.

VILLAGE GUN SHOP, INC.
Defendant-Appellee

————————————

On Appeal from a Decision of the
United States District Court for the
District of Massachusetts
District Court No. 1:12-cv-40032

————————————

BRIEF of APPELLEE
VILLAGE GUN SHOP, INC.

========

Attorney for Appellee
Mark I. Zarrow
Lian, Zarrow
34 Mechanic Street
Worcester, MA 01608
(508) 799-4461
mzarrow@lianzarrow.com

## COPRPORATE DISCLOSURE STATEMENT

Defendant-Appellee Village Gun Shop, Inc. has no parent corporation and no publicly held corporation owns its stock. It is not a publicly held corporation.

## TABLE OF CONTENTS

Table of Authorities ................................................................................ ii

     Cases ........................................................................................ ii

     Statutes ................................................................................... iii

Statement of the Issues on Appeal ......................................................... 1

Statement of the Case ............................................................................. 1

     Prior Proceedings .................................................................... 1

     Statutory Framework .............................................................. 2

     Facts ......................................................................................... 3

Summary of Argument ........................................................................... 5

Argument ............................................................................................... 6

     Introduction ............................................................................. 6

     Argument I ............................................................................... 6

     Argument II ........................................................................... 11

Conclusion ........................................................................................... 14

Addendum and Contents ................................... immediately following 14

# TABLE OF AUTHORITIES

Cases:

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*,
531 U.S. 288 (2001).................................................................7

*City of W. Covina v. Perkins*, 525 U.S. 234 (1999)................................................12

*Coleman v. Turpen*, 697 F.2d 1341 (10th Cir. 1982)...............................................10

*Dopp v. Loring*, 245 Fed.Appx. 842, 2007WL 2452683 (C.A.10 (Okla.)..............10

*Estades-Negroni v. CPC Hosp. San Juan Capestrano*,
412 F.3d 1 (1st Cir. 2005).....................................................................6, 8

*Flagg Bros. v. Brooks*, 436 U.S. 149 (1978).........................................................6, 7

*Godfrey v. Chief of Police of Wellesley*, 35 Mass.App.Ct. 42,
616 N.E.2d 485 (1993)..........................................................................11

*Grapentine v. Pawtucket Credit Union*, 755 F.3d 29 (1st Cir. 2014).......................8

*Gun Owners' Action League, Inc. v. Swift*, 284 F.3d 198 (1st Cir. 2002)...............12

*Harvey v. Harvey,* 949 F.2d 1127 (11th Cir.1992)....................................................6

*Hightower v. City of Boston*, 693 F.3d 61 (1st Cir. 2012)................................10, 11

*Hudson v. Palmer*, 468 U.S. 517 (1984)................................................................13

*Huxall v. First State Bank*, 842 F.2d 249 (10th Cir. 1988)....................................10

*Jackson v. Metropolitan Edison Co.,* 419 U.S. 345 (1974)......................................7

*Kelley v. LaForce*, 288 F.3d 1 (1st Cir. 2002).........................................................13

*Klunder v. Brown Univ.*, 778 F.3d 24 (1st Cir. 2015)...............................................6

*Logiodice v. Trustees of Maine Cent. Inst.*, 296 F.3d 22 (1st Cir. 2002)..................7

*Lugar v. Edmonson Oil Co.*, 457 U.S. 922 (1982) .....................................................7

*Mead v. Independence Ass'n*, 684 F.3d 226 (1st Cir. 2012).....................................8

*O'Neill v. Baker*, 210 F.3d 41 (1st Cir. 2000) .......................................................13

*Opinion of the Justices to the House of Representatives*,
408 Mass. 1215, 563 N.E.2d 203 (1990) .................................................................12

*Pascoag Reservoir & Dam, LLC v. Rhode Island*, 337 F.3d 87 (1st Cir. 2003) .....13

*Penney v. First Nat. Bank of Boston*, 385 Mass. 715,
433 N.E.2d 901 (1982).............................................................................................7

*Smith v. Insley's, Inc.*, 499 F.3d 875 (8th 2007) ....................................................9

*Spinelli v. City of New York,* 579 F.3d 160 (2d Cir.2009) .....................................11

*Stypmann v. San Francisco*, 557 F.2d 1338 (9th Cir. 1977) ..................................9

*Texaco v. Short,* 454 U.S. 516 (1982).....................................................................12

*Third Nat. Bank of Hampden Cnty. v. Cont'l Ins. Co.,*
388 Mass. 240, 446 N.E.2d 380 (1983) ..................................................................13

*United States v. DeBartolo*, 482 F.2d 312 (1st Cir. 1973)......................................12

*United States v. One 1971 BMW*, 652 F.2d 817 (9th Cir. 1981) ...............................9

*Zullo v. Goguen*, 423 Mass. 679, 681, 672 N.E.2d 502 (1996)...............................11

Statutes:

42 U.S.C. § 1983 ...............................................................................................1, 5, 13

G.L. c. 140, § 129D.................................................................................................2, 3

G.L. c. 209A, § 3.........................................................................................................3

G.L. c. 209A, § 3B ................................................................................................3, 11

Chapter 209A, § 3C ..................................................................................3

Chapter 209A, § 4 ....................................................................................3

G.L. c. 249, § 4...................................................................................3, 11

<u>STATEMENT OF THE ISSUES ON APPEAL</u>

I.  Where the Defendant, Village Gun Shop, Inc., Stored and Eventually Auctioned Guns Seized By Police and Licensing Authorities Pursuant to the Commonwealth's Statutory Scheme Was it a State Actor Liable for Alleged Violations of Plaintiff Gun Owners' Right to Due Process

II. Even if Defendant Village Gun Shop, Inc. Were to be Held to Have Been a State Actor Could it be Held Liable Under 42 U.S.C. § 1983 to Plaintiff Gun Owners When it Did Not Deprive Them of Their Right To Due Process Of Law

<u>STATEMENT OF THE CASE</u>

<u>Prior Proceedings</u>

Plaintiffs filed suit seeking relief under 42 U.S.C. § 1983 in the United States District Court for the District of Massachusetts on March 27, 2012. (App. 3) They named as defendants the Secretary of the Executive Office of Public Safety and Security for the Commonwealth of Massachusetts and Village Gun Shop, Inc. d/b/a Village Vault (hereinafter "Village Gun Shop"). (App. 13) Plaintiffs brought a motion for partial summary judgment that was argued before Judge William Young, who entered summary judgement for defendant Village Gun Shop on October 14, 2014. (App. 10, copy of lower court's Memorandum and Order set forth in Addendum to Plaintiff's Brief at Add. 1) After a stipulation dismissing plaintiff's claim against the Commonwealth was approved final judgment was entered by Judge Leo Sorokin on November 24, 2014. Plaintiffs then appealed. (App. 11-12)

<u>Statutory Framework</u>

In order to deal with the issues raised by this case it is necessary to examine the statutory framework under which the weapons at issue were initially seized and then held and disposed of. Under Massachusetts law, G.L. c. 140, § 129D, firearms seized by law enforcement authorities, or surrendered to them, may be disposed of in two ways. (Add. 1) [1] The first, if the licensing authority, usually the local or State Police, chooses to store the weapons it may do so for up to one year. The owner, within that year, may have them transferred to a person or dealer with a valid license or, if the owner regains his license, to regain them. After the year has passed the colonel of the State Police is authorized to auction them. The second way provides that the authority may transfer the firearms to a "federally and state licensed dealer" who will store them on its premises. The dealer must 1) inspect each weapon, 2) issue a receipt to the owner indicating the particulars concerning each weapon and 3) store and maintain the weapons. The owner is liable to the dealer for reasonable storage charges. The owner may also dispose of the weapons in the same manner as if they were still being held by the licensing authority. If the owner falls in arrears in the payment of storage charges by 90 days the dealer is authorized to auction the weapons. After recovering its costs the surplus, if any, must be sent to the owner. Another section of c. 140 allows the owner of the

---

[1] References to "Add." refer to the Addendum to this, Appellee's, Brief.

weapon to file a Petition for Judicial Review in the district court. See c. 140, § 131.[2] (Add. 2) Thereafter, if still aggrieved, he may file a complaint in the nature of a writ of certiorari in the superior court pursuant to the provisions of G.L. c. 249, § 4. (Add. 4)

G.L. c. 209A, applies generally to the protection of abused individuals. Section 3B of the statute requires, if the complaining party "demonstrates a substantial likelihood of immediate danger of abuse" the suspension of any license to carry and the weapons themselves. Chapter 209A, §§ 3C and 4, allows for a review hearing on the seizure, if the order was obtained ex parte, within ten days. (Add. 2-4) Once the weapons are received by the law enforcement authority they are to be handled, including transfer to a licensed dealer for storage, under the provisions of G.L. c. 140, § 129D. See c. 140, § 131. (Add. 2)

Facts

On or about July 9, 2010 the then wife of plaintiff James Jarvis obtained an *ex parte* order of protection from abuse against him under Massachusetts G.L. c. 209A, § 4. On that date, pursuant to the order, the Massachusetts State Police took custody of the guns from James Jarvis's home. (App. 46-48, 60, 80, 108-09) The guns were owned by James Jarvis, his son, James Jr., and his father, plaintiff

_____

[2] The statute, a portion of which is reproduced in the appendix, has subsequently been amended, but not in any material way that would affect the procedural rights of the parties.

Russell Jarvis. (App. 47-48, 60-61, 80-81, 107-09) The July order was extended for a one year period on August 10, 2010. (App. 8, 46) The State Police transferred custody of the Jarvises' guns to Village Gun Shop on August 11, 2010. (App. 50, 61-62, 81, 109) On that same day Village Gun Shop inventoried the seized items and wrote to James Jarvis providing the inventory and an initial invoice showing the administrative fee, handling fee and storage charge. (App. 65-75) Russell Jarvis inquired about the status of his guns with the State Police before they sent them to Village Vault but took no action to take possession of them. (App. 61) Neither James Jarvis nor James Jarvis, Jr. took any action to regain possession or control of the guns while they were in the custody of the State Police, other than to inquire about them. (App 60-61, 80-81) After the Jarvises failed to pay the applicable charges the guns were auctioned on May 21 and September 24, 2011. (App. 98)

On June 2, 2010 Tewksbury Police went to plaintiff Robert Crampton's home after he contacted them to report a theft. (App. 49-50, 100, 109) The police took custody of his two shotguns and a revolver after learning that he did not have a valid license to possess the weapons. (App. 50, 100, 109) Crampton took no action to regain possession or control of the guns from the police. (App. 100-101) The police transferred plaintiff Crampton's guns to Village Gun Shop on November 15, 2010. (App. 51, 100-01, 109) On that date Village Gun Shop inventoried the items and wrote to Robert Crampton providing the inventory and

an initial invoice showing the administrative fee, handling fee and storage charge. (App. 104-106) No payments were received and the guns were auctioned on September 24 and November 19, 2011. (App. 106)

## SUMMARY OF ARGUMENT

The plaintiffs claim Village Gun Shop violated their right to due process by charging for the storage of their guns, which had been seized by or surrendered to the police, and auctioning them off for the unpaid storage charges. In bringing their case in federal court under 42 U.S.C. § 1983, plaintiffs must show that Village Gun Shop was a state actor that violated their due process rights. They cannot show that Village Gun Shop was a state actor. It took no action in conjunction with the police. It was under no state compulsion to store or auction the weapons. It was not performing a function, warehousing, exclusively reserved to the state.

Moreover, the plaintiffs were not deprived of their rights to due process. They were entitled to seek the return of their weapons by means of various appeals to licensing authorities, through state courts or both. They were also entitled to have a duly licensed individual, or a gun dealer of their choice, store their weapons under an arrangement between each plaintiff and such individual or dealer. Finally, they continue to have adequate state common law remedies. Summary judgment was properly granted to Village Gun Shop.

## ARGUMENT

## Introduction

The question presented here is two-fold; were the plaintiffs deprived of their due process rights by a person or entity acting under color of law? Thus, was Village Gun Shop a state actor and did it deprive the plaintiffs of their right to due process? In order to hold it liable the answer to both questions must be *yes*. The issues are closely related and cannot be isolated from each other. See e.g. *Flagg Bros. v. Brooks*, 436 U.S. 149, 156 (1978). Nevertheless, the answer to both questions is a resounding *no*. Summary judgment was correctly granted in favor of defendant Village Gun Shop.

I.  Where the Defendant, Village Gun Shop, Inc., Stored and Eventually Auctioned Guns Seized By Police and Licensing Authorities Pursuant to the Commonwealth's Statutory Scheme It Was Not a State Actor Liable for Alleged Violations of Plaintiff Gun Owners' Right to Due Process

"It is '[o]nly in rare circumstances' that private parties can be viewed as state actors." *Estades-Negroni v. CPC Hosp. San Juan Capestrano*, 412 F.3d 1, 4 (1st Cir. 2005) quoting *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir.1992). Put otherwise, holding a private party as a state actor is the exception to the rule. See *Klunder v. Brown Univ.*, 778 F.3d 24, 30 (1st Cir. 2015) (private university enforcing internal policies not state actor.)

The due process clause of the Fourteenth Amendment only applies to state actions or to losses caused by a "person who may be fairly said to be a state actor."

*Lugar v. Edmonson Oil Co*., 457 U.S. 922, 937 (1982). A party may only be a state

actor if he carries out an activity, "traditionally exclusively reserved to the state."

*Flagg Bros. v. Brooks, supra*, 436 U.S. at 157 quoting *Jackson v. Metropolitan*

*Edison Co.,* 419 U.S. 345, 352 (1974). See also *Logiodice v. Trustees of Maine*

*Cent. Inst.*, 296 F.3d 22, 26 (1st Cir. 2002) ("Fourteenth Amendment protects

individuals only against government (leaving private conduct to regulation by

statutes and common law."))

In *Flagg Bros.* the Court held the exercise of a warehouseman's lien to sell

goods put in storage by a city official at the time of a private eviction was not state

action. The case is remarkably similar to the facts here. See also *Penney v. First*

*Nat. Bank of Boston*, 385 Mass. 715, 719, 433 N.E.2d 901, 904 (1982) (*Flagg*

*Bros*. persuasive authority for proposition that no State action in legislative

authorization for creditors' self-help remedies not involving governmental

participation.)

In *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S.

288, 296 (2001) the Supreme Court provided examples of cases where state action

by a private party has been found. Thus:

> A challenged activity may be state action when it results from the State's
> exercise of "coercive power," when a private actor operates as a "willful
> participant in joint activity with the State or its agents," a nominally private
> entity is controlled by an "agency of the State," when it has been delegated a
> public function by the State, when it is "entwined with governmental

policies," or when government is "entwined in [its] management or control, …"

(citations omitted.) None of those elements are present here. On the other hand a mortgagee's sale of real estate pursuant to its foreclosure was neither carrying out a public function, acting jointly with the state or under state compulsion such that it could be treated as a state actor. *Grapentine v. Pawtucket Credit Union*, 755 F.3d 29, 31 (1st Cir. 2014). Nor was a private employer subject to unreasonable governmental interference in terminating its employee so as to hold it liable as a state actor *Mead v. Independence Ass'n*, 684 F.3d 226, 232 (1st Cir. 2012). Nor was a hospital or its employees state actors in holding a patient committed under state law where, statutory scheme did not compel or encourage involuntary commitment, the state was not involved in decisions concerning commitment, and neither medical care for patients involuntary committed nor provision of health care services to indigents were functions reserved exclusively to the state. *Estades-Negroni v. CPC Hosp. San Juan Capestrano, supra*, 412 F.3d at 4-9. So here Village Gun Shop's receipt of weapons and storing them pursuant to the state statutory scheme did not make it a state actor where it was not compelled by the state to store the weapons, to charge for storage or to sell them for non-payment, in accordance with its own policies. Nor was it carrying out a traditional government function in storing weapons.

The cases holding that the owners of private storage facilities may be held liable under 42 U.S.C. § 1983 rest on markedly different facts. For example, in *Smith v. Insley's, Inc.*, 499 F.3d 875 (8th 2007), Insley's, a private towing and automobile storage service, towed and stored plaintiff's car at the behest of the local sheriff's department in conjunction with a murder investigation. Therefore, there was joint action with the state. *Smith* at 880. Insley's had a contract with the sheriff under which, for a period of time, it was the exclusive provider of towing and garaging services. *Id*. Furthermore, in responding to plaintiff's agents concerning return of the car it consistently pointed to the sheriff as having the authority to release the vehicle. "[W]e find that Insley's and the sheriff's office were essentially the same state actor for the limited purpose of being responsible for the whereabouts of Smith's truck." *Smith* at 881.

*Stypmann v. San Francisco*, 557 F.2d 1338 (9th Cir. 1977) also involved the seizure, towing and garaging of a vehicle at the request of the police. The towing company and the police acted jointly. *Stypmann* at 1341. The statute authorizing the seizure and storage did not provide the owner, under the circumstances there, with a prompt post-deprivation process by which the lawfulness of the seizure could be determined. *Stypmann* at 1342-1343. Cf. *United States v. One 1971 BMW*, 652 F.2d 817, 820 (9th Cir. 1981) (distinguishing *Stypmann* regarding the seizure of an automobile because the violation, possession of and transporting a controlled

substance, was a much more serious offense and the appellant was afforded sufficiently prompt remedies including the right to petition for remission of the forfeiture and the right to judicial review of the forfeiture.) See also *Hightower v. City of Boston*, 693 F.3d 61, 87 (1st Cir. 2012). In this matter there were ample procedural protections for one whose dangerous weapons were seized.

In *Coleman v. Turpen*, 697 F.2d 1341 (10th Cir. 1982) a towing and storage company (Kiefer) was held as a state actor. "Kiefer jointly participated [with the police] in seizing the truck by towing it away. Since the State has asserted a right to maintain possession of the camper, Kiefer held the truck for the State, not for Mr. Coleman." *Coleman* at 1344. Cf. *Huxall v. First State Bank*, 842 F.2d 249 (10th Cir. 1988) where plaintiff's claim of due process violation by sheriff's sale of exempt personal property was distinguished from *Coleman* because "[plaintiff] did have an opportunity to be heard regarding the legality of the … sale." Cf. also *Dopp v. Loring*, 245 Fed.Appx. 842, 846-847, 2007WL 2452683 (C.A.10 (Okla.) (unpublished) (defendant held not a state actor where, although he acted for the state in towing a car, the state did not direct him to sell the car.)

Here, Village Gun Shop did not participate in the seizure of the guns in cooperation with the police. It did not store the guns for the police. The plaintiffs had adequate post-seizure remedies none of which they chose to avail themselves. They took no meaningful action to recover their property while in the possession of

the police, for which there would have been no storage charge. Village Gun shop, under the facts here, was not a state actor.

II.  Even if Defendant Village Gun Shop, Inc. Were to be Held to Have Been a State Actor it Was Not Liable to Plaintiff Gun Owners Because it Did Not Deprive Them of Their Right To Due Process Of Law

The seizures of the weapons, not their ultimate disposition, implicate plaintiffs' due process rights. An initial order to surrender guns under G.L. c. 209A may be reviewed by the issuing court as provided in § 3B. A final order may be reviewed by direct appeal to the Massachusetts Appeals Court. *Zullo v. Goguen*, 423 Mass. 679, 672 N.E.2d 502 (1996). An order from the licensing authority suspending or revoking a firearms license may be reviewed by petition to the local state district court. *Godfrey v. Chief of Police of Wellesley*, 35 Mass.App.Ct. 42, 44, 616 N.E.2d 485, 487 (1993), and thereafter by complaint for review, in the nature of certiorari, to the Superior Court pursuant to G.L. c. 249, § 4, and thence to the Massachusetts Appeals Court. None of the plaintiffs contested the police departments' initial seizures or acceptance of the surrender of the firearms at issue.

Their rights to contest the seizures after the fact were sufficient to satisfy due process. *Hightower v. City of Boston, supra*, 693 F.3d at 87. See also *Spinelli v. City of New York,* 579 F.3d 160, 170–71 (2d Cir.2009) (pre-deprivation process not required to suspend gun dealer's license where security lapses at gun store endangered public safety). Plaintiffs do not appear to argue otherwise. When the

guns left the two police departments' possession plaintiffs had failed to avail themselves of their right to due process.

The plaintiffs were on notice, by virtue of the statutes governing the seizures, of their due process rights. See e.g. *City of W. Covina v. Perkins*, 525 U.S. 234, 241 (1999) (individualized notice of state-law remedies which are established by published, generally available state statutes and case law not required). See also *United States v. DeBartolo*, 482 F.2d 312, 316 (1st Cir. 1973) ("the probability of regulation [of firearms] is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation;" *Gun Owners' Action League, Inc. v. Swift*, 284 F.3d 198, 207 (1st Cir. 2002). ("[W]e have long held that all owners of firearms are on notice that they are subject to regulation, including licensing.") Furthermore, "persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property." *Opinion of the Justices to the House of Representatives*, 408 Mass. 1215, 563 N.E.2d 203 (1990) citing *Texaco v. Short,* 454 U.S. 516, 532 (1982). Therefore, despite their protestations that they were unaware of the law's requirements, plaintiffs waived their claims regarding violation of their due process rights.

In addition to the post deprivation remedies available under statutes, plaintiffs have common law remedies available to them. For example, if Village

Gun Shop acted wrongfully, plaintiffs may have a claim for conversion. See e.g. *Kelley v. LaForce*, 288 F.3d 1, 11-12 (1st Cir. 2002). See also *Third Nat. Bank of Hampden Cnty. v. Cont'l Ins. Co.,* 388 Mass. 240, 244, 446 N.E.2d 380, 383 (1983). Indeed, the plaintiffs here are essentially making a claim under 42 U.S.C. § 1983 because they might receive a more favorable award than is available to them under the common law. That is hardly a basis for invoking federal jurisdiction. Where plaintiffs have adequate state remedies available to them they may not avail themselves of a federal remedy. See e.g. *O'Neill v. Baker*, 210 F.3d 41, 50 (1st Cir. 2000). See also *Pascoag Reservoir & Dam, LLC v. Rhode Island*, 337 F.3d 87, 94 (1st Cir. 2003).

Village Gun Shop, in taking possession of the guns from the police, storing them, notifying the owners, and eventually selling them at auction did not deprive plaintiffs of their right to due process. Village Gun Shop took no action that deprived plaintiffs of their constitutional rights. The process they were due, a hearing on the seizure of their property was available to them, but they ignored or waived it. See e.g. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (state action not complete unless and until it provides suitable post deprivation remedy). "[The destruction [of a prisoner's property] did not violate the Fourteenth Amendment since the Commonwealth of Virginia has provided respondent an adequate postdeprivation remedy." *Id.* at 536.

To allow plaintiffs to maintain an action for a civil rights violation against Village Gun Shop, a private entity, under these circumstances would be to allow them to make an end run around the procedures that were established so they could challenge the initial action of the state, the seizure. It would be ironic in the extreme to hold plaintiffs could proceed against a private party is if it was an agent of the state when they failed to proceed against the state or utilize the protections provided to them under state law. The plaintiffs cannot have it both ways. On the one hand they want to convince the court the defendant acted for the state. On the other hand it was the Commonwealth of Massachusetts that had the means to provide them with due process and they failed to take advantage of those means.

## CONCLUSION

Based on the foregoing plaintiffs have failed to demonstrate any error of law in the court below granting summary judgment in favor of defendant Village Gun Shop. The decision below should be affirmed and the appeal dismissed.

Dated:       April 29, 2014

/s/Mark I. Zarrow
Mark I. Zarrow
Lian, Zarrow
34 Mechanic Street
Worcester, MA 01608
(508) 799-4461
mzarrow@lianzarrow.com

# ADDENDUM

## Contents

Mass. G.L. c. 140, § 129D ........................................................................................1

Mass. G.L. c. 140, § 131 ..........................................................................................2

Mass. G.L. c. 209A, § 3 ...........................................................................................3

Mass. G.L. c. 209A, § 3B .........................................................................................3

Mass. G.L. c. 209A, § 3C .........................................................................................4

Mass. G.L. c. 209A, § 4 ...........................................................................................4

Mass. G.L. c. 249, § 4 ..............................................................................................5

### Chapter 140, § 129D

Surrender of firearms and ammunition to licensing authority upon denial of application for, or revocation of, identification card or license; right to transfer; sale by colonel of state police; rules and regulations

Upon revocation, suspension or denial of an application for a firearm identification card pursuant to section 129B or for any firearms license if the firearm identification card is not then in force or for any machine gun license, the person whose application was so revoked, suspended or denied shall without delay deliver or surrender to the licensing authority where the person resides all firearms, rifles, shotguns and machine guns and ammunition which the person then possesses unless an appeal of the revocation or suspension is pending. The person or the person's legal representative shall have the right, at any time up to 1 year after the delivery or surrender, to transfer the firearms, rifles, shotguns and machine guns and ammunition to any licensed dealer or any other person legally permitted to purchase or take possession of the firearms, rifles, shotguns and machine guns and ammunition and, upon notification in writing by the purchaser or transferee and the former owner, the licensing authority shall within 10 days deliver the firearms, rifles, shotguns and machine guns and ammunition to the transferee or purchaser and the licensing authority shall observe due care in the receipt and holding of any such firearm, rifle, shotgun or machine gun and ammunition; provided, however, that the purchaser or transferee shall affirm in writing that the purchaser or transferee shall not in violation of section 129C transfer the firearms, rifles, shotguns or machine guns or ammunition to the former owner. The licensing authority shall at the time of delivery or surrender inform the person in writing of the authority's ability, within 1 year after delivery or surrender, to transfer the firearms, rifles, shotguns and machine guns and ammunition to any licensed dealer or other person legally permitted to purchase or take possession.

The licensing authority, after taking possession of any firearm, rifle, shotgun, machine gun or ammunition by any means, may transfer possession of such weapon for storage purposes to a federally and state licensed dealer of such weapons and ammunition who operates a bonded warehouse on the licensed premises that is equipped with a safe for the secure storage of firearms and a weapon box or similar container for the secure storage of other weapons and ammunition; provided, however, that the licensing authority shall not transfer to such dealer possession of any weapon that is or may be evidence in any current or pending criminal case concerning a violation of any general or special law, rule or regulation governing the use, possession or ownership of such weapon. Any such dealer that takes possession of a weapon under the provisions of this section shall: (i) inspect such weapon; (ii) issue to the owner a receipt indicating the make, model, caliber, serial number and condition of each weapon so received; and (iii) store and maintain all weapons so received in accordance with such regulations, rules or guidelines as the secretary of the executive office of public safety may establish under this section. The owner shall be liable to such dealer for reasonable storage charges and may dispose of any such weapon as provided under this section by transfer to a person lawfully permitted to purchase or take possession of such weapon.

Firearms, rifles, shotguns or machine guns and ammunition not disposed of after delivery or surrender according to the provisions of this section shall be sold at public auction by the colonel of the state police to the highest bidding person legally permitted to purchase and possess said firearms, rifles, shotguns or machine guns and ammunition and the proceeds shall be remitted to the state treasurer. Any such weapon that is stored and maintained by a licensed dealer as provided under this section may be so auctioned at the direction of: (i) the licensing authority at the expiration of one year following initial surrender or delivery to such licensing authority; or (ii) the dealer then in possession, if the storage charges for such weapon have been in arrears for 90 days; provided, however, that in either case, title shall pass to the licensed dealer for the purpose of transferring ownership to the auctioneer; and provided further, that in either case, after deduction and payment for storage charges and all necessary costs associated with such surrender and transfer, all surplus proceeds, if any, shall be immediately returned to the owner of such weapon; provided, however, that no firearm, rifle, shotgun or machine gun or ammunition classified as having been used to carry out a criminal act pursuant to section 131Q shall be sold at public auction pursuant to this section.

If the licensing authority cannot reasonably ascertain a lawful owner within 180 days of acquisition by the authority, the authority may, in its discretion, trade or dispose of surplus, donated, abandoned or junk firearms, rifles, shotguns or machine guns or ammunition to properly licensed distributors or firearms dealers. The proceeds of the sale or transfer shall be remitted or credited to the municipality in which the authority presides to purchase weapons, equipment or supplies or for violence reduction or suicide prevention; provided, however, that no firearm, rifle, shotgun or machine gun or ammunition classified as having been used to carry out a criminal act pursuant to section 131Q shall be considered surplus, donated, abandoned or junk for the purposes of this section.

Chapter 140, § 131 (partial)
Licenses to carry firearms; Class A and B; conditions and restrictions
Any applicant or holder [of a firearm as defined by statute] aggrieved by a denial, revocation or suspension of a license, unless a hearing has previously been held pursuant to chapter 209A, may, within either 90 days after receiving notice of such denial, revocation or suspension or

within 90 days after the expiration of the time limit during which the licensing authority is required to respond to the applicant, file a petition to obtain judicial review in the district court having jurisdiction in the city or town wherein the applicant filed for, or was issued, such license. A justice of such court, after a hearing, may direct that a license be issued or reinstated to the petitioner if such justice finds that there was no reasonable ground for denying, suspending or revoking such license and that the petitioner is not prohibited by law from possessing same.

Chapter 209A, § 3 (partial)
Remedies; period of relief
A person suffering from abuse from an adult or minor family or household member may file a complaint in the court requesting protection from such abuse, including, but not limited to, the following orders:
(a) ordering the defendant to refrain from abusing the plaintiff, whether the defendant is an adult or minor;
(b) ordering the defendant to refrain from contacting the plaintiff, unless authorized by the court, whether the defendant is an adult or minor;
(c) ordering the defendant to vacate forthwith and remain away from the household, multiple family dwelling, and workplace. Notwithstanding the provisions of section thirty-four B of chapter two hundred and eight, an order to vacate shall be for a fixed period of time, not to exceed one year, at the expiration of which time the court may extend any such order upon motion of the plaintiff, with notice to the defendant, for such additional time as it deems necessary to protect the plaintiff from abuse;
(d) awarding the plaintiff temporary custody of a minor child; provided, however, that in any case brought in the probate and family court a finding by such court by a preponderance of the evidence that a pattern or serious incident of abuse, as defined in section 31A of chapter 208, toward a parent or child has occurred shall create a rebuttable presumption that it is not in the best interests of the child to be placed in sole custody, shared legal custody or shared physical custody with the abusive parent. Such presumption may be rebutted by a preponderance of the evidence that such custody award is in the best interests of the child. For the purposes of this section, an "abusive parent" shall mean a parent who has committed a pattern of abuse or a serious incident of abuse; …

Chapter 209A, § 3B
Order for suspension and surrender of firearms license; surrender of firearms; petition for review; hearing
Upon issuance of a temporary or emergency order under section four or five of this chapter, the court shall, if the plaintiff demonstrates a substantial likelihood of immediate danger of abuse, order the immediate suspension and surrender of any license to carry firearms and or firearms identification card which the defendant may hold and order the defendant to surrender all firearms, rifles, shotguns, machine guns and ammunition which he then controls, owns or possesses in accordance with the provisions of this chapter and any license to carry firearms or firearms identification cards which the defendant may hold shall be surrendered to the appropriate law enforcement officials in accordance with the provisions of this chapter and, said law enforcement official may store, transfer or otherwise dispose of any such weapon in accordance with the provisions of section 129D of chapter 140; provided however, that nothing herein shall authorize the transfer of any weapons surrendered by the defendant to anyone other

than a licensed dealer. Notice of such suspension and ordered surrender shall be appended to the copy of abuse prevention order served on the defendant pursuant to section seven. Law enforcement officials, upon the service of said orders, shall immediately take possession of all firearms, rifles, shotguns, machine guns, ammunition, any license to carry firearms and any firearms identification cards in the control, ownership, or possession of said defendant. Any violation of such orders shall be punishable by a fine of not more than five thousand dollars, or by imprisonment for not more than two and one-half years in a house of correction, or by both such fine and imprisonment.

Any defendant aggrieved by an order of surrender or suspension as described in the first sentence of this section may petition the court which issued such suspension or surrender order for a review of such action and such petition shall be heard no later than ten court business days after the receipt of the notice of the petition by the court. If said license to carry firearms or firearms identification card has been suspended upon the issuance of an order issued pursuant to section four or five, said petition may be heard contemporaneously with the hearing specified in the second sentence of the second paragraph of section four. Upon the filing of an affidavit by the defendant that a firearm, rifle, shotgun, machine gun or ammunition is required in the performance of the defendant's employment, and upon a request for an expedited hearing, the court shall order said hearing within two business days of receipt of such affidavit and request but only on the issue of surrender and suspension pursuant to this section

Chapter 209A, § 3C
Continuation or modification of order for surrender or suspension
Upon the continuation or modification of an order issued pursuant to section 4 or upon petition for review as described in section 3B, the court shall also order or continue to order the immediate suspension and surrender of a defendant's license to carry firearms, including a Class A or Class B license, and firearms identification card and the surrender of all firearms, rifles, shotguns, machine guns or ammunition which such defendant then controls, owns or possesses if the court makes a determination that the return of such license to carry firearms, including a Class A or Class B license, and firearm identification card or firearms, rifles, shotguns, machine guns or ammunition presents a likelihood of abuse to the plaintiff. A suspension and surrender order issued pursuant to this section shall continue so long as the restraining order to which it relates is in effect; and, any law enforcement official to whom such weapon is surrendered may store, transfer or otherwise dispose of any such weapon in accordance with the provisions of section 129D of chapter 140; provided, however, that nothing herein shall authorize the transfer of any weapons surrendered by the defendant to anyone other than a licensed dealer. Any violation of such order shall be punishable by a fine of not more than $5,000 or by imprisonment for not more than two and one-half years in a house of correction or by both such fine and imprisonment.

Chapter 209A, § 4
Temporary orders; notice; hearing
Upon the filing of a complaint under this chapter, the court may enter such temporary orders as it deems necessary to protect a plaintiff from abuse, including relief as provided in section three. Such relief shall not be contingent upon the filing of a complaint for divorce, separate support, or paternity action.

If the plaintiff demonstrates a substantial likelihood of immediate danger of abuse, the court may enter such temporary relief orders without notice as it deems necessary to protect the plaintiff from abuse and shall immediately thereafter notify the defendant that the temporary orders have been issued. The court shall give the defendant an opportunity to be heard on the question of continuing the temporary order and of granting other relief as requested by the plaintiff no later than ten court business days after such orders are entered.

Notice shall be made by the appropriate law enforcement agency as provided in section seven. If the defendant does not appear at such subsequent hearing, the temporary orders shall continue in effect without further order of the court.

Chapter 249, § 4

Action in the nature of certiorari; limitation; joinder of party defendant; injunction; judgment

A civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal, may be brought in the supreme judicial or superior court or, if the matter involves any right, title or interest in land, or arises under or involves the subdivision control law, the zoning act or municipal zoning, or subdivision ordinances, by-laws or regulations, in the land court or, if the matter involves fence viewers, in the district court. Such action shall be commenced within sixty days next after the proceeding complained of. Where such an action is brought against a body or officer exercising judicial or quasi-judicial functions to prevent the body or officer from proceeding in favor of another party, or is brought with relation to proceedings already taken, such other party may be joined as a party defendant by the plaintiff or on motion of the defendant body or officer or by application to intervene. Such other party may file a separate answer or adopt the pleadings of the body or officer. The court may at any time after the commencement of the action issue an injunction and order the record of the proceedings complained of brought before it. The court may enter judgment quashing or affirming such proceedings or such other judgment as justice may require.